DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Hope Steffey, et al.,                    )
                                         )      CASE NO. 5:07 CV 3226
                Plaintiffs,              )
                                         )
        v.                               )      MEMORANDUM OPINION AND
                                         )      ORDER
Timothy A. Swanson, et al.,              )
                                         )
                Defendants.              )

Plaintiffs Hope Steffey ("Mrs. Steffey) and her husband Greg Steffey ("Mr. Steffey")

filed an eleven count fourth amended complaint alleging various claims surrounding

the arrest and detention of Mrs. Steffey at the Stark County Jail on or about

October 20-21, 2006.  ECF 66.  Defendants Timothy Swanson, Board of Commissioners for

Stark County, and individual Stark County deputy sheriffs Richard Gurlea, Laura Rodgers, Tony

Gayles, Andrea Mays, Brian Michaels, and Kristen Fenstemaker, previously reached a resolution

with plaintiffs as to these defendants.  *See* ECF 244.  Plaintiffs' agreement with the above-named

defendants resolves counts 1, 2, 3, 4, 5, 9 and 10 of the fourth amended complaint in their

entirety, and counts 6, 7, and 8 in part as to the above-named defendants.

Portions of counts 6 and 7 as to the remaining defendants, i.e., Marion Psychological,

Inc. ("MPI"), Dr. Thomas M. Anuszkiewicz ("Dr. Anuszkiewicz") Correctional Health Care

Group, Inc. ("CHCG") and Jonathan Stump ("Mr. Stump"), claim negligence and violation of 42

U.S.C. § 1983, alleging that these defendants failed to train and supervise Stark County Jail and

medical and mental health staff.  Portions of count 8 also remain against MPI, Dr. Anuszkiewicz,

CHCG, and Mr. Stump, alleging loss of consortium.  Lastly, count 11 remains in its entirety

(5:07 CV 3226)

against CHCG and MPI for respondeat superior liability, alleging that Stump and Dr. Anuszkiewicz failed to train and supervise Stark County Jail and medical and mental health staff.

With respect to the claims which remain, defendants MPI and Dr. Anuszkiewicz have moved for summary judgment (ECF 230), as have defendants CHCG and Mr. Stump (ECF 242/243).  Plaintiffs have opposed both motions (ECF 256).  MPI and Dr. Anuszkiewicz have replied (ECF 259). CHCG and Stump both replied and filed a partial motion to strike certain exhibits in plaintiffs' opposition to the summary judgment motions which defendants claim are not properly authenticated.  (ECF 261 and 260, respectively).  CHCG's and Stump's partial motion to strike has been opposed by plaintiffs (ECF 263). [1]

## I. FACTS

A.      Health Care at the Stark County Jail

1.      CHCG/Jonathan Stump

The Board of Commissioners of Stark County (hereafter "Stark County") contracted with CHCG to provide medical and mental health care to inmates and detainees at the Jail after CHCG's bids to provide those services were selected by Stark County.  *See* ECF 242-1 and 242-2 (medical care);  ECF 242-3 and 242-4 (mental health care).  Defendant Mr. Stump is the president and sole shareholder of CHCG.  Mr. Stump maintained an office in the Jail.

---

[1] Since the Court, in ruling upon the summary judgment motions, has not considered any of the documents or exhibits at issue in the motion to strike, the Court will deny the motion to strike as moot.

(5:07 CV 3226)

        a.    <u>Medical Health Care</u>

As part of the contract with Stark County to provide medical care, CHCG provided nursing staff at the Jail.  Nurse Caren Lennon ("Nurse Lennon" or "Lennon"), who was on site at the time Mrs. Steffey was brought to the Jail in October 2006, is a CHCG employee.  Also as part of the medical care contract with Stark County, CHCG was required to provide training and health education to staff and inmates in areas to be determined by the Stark County Sheriff and CHCG.  *See* ECF 242-1, par. 1.23, p. 13 of 23.

Under CHCG's medical agreement with Stark County, CHCG's "medical personnel" were responsible for the identification of suicidal behaviors at the Stark County Jail.  *See* ECF 242-2, p. 40-41 of 126.   Under the agreement, training regarding mental health protocols, including suicide precautions, was to be performed by the contract psychologist, Dr. Anuszkiewicz.  *Id.*

CHCG's proposal to provide medical services to the Jail included suicide assessment, precautions and procedures.  *See* ECF 242-2, pp. 35-42.  Development of a suicide precaution policy was CHCG's responsibility.  ECF 240 (Stump Depo.), pp. 92-95.  Dr. Anuszkiewicz had input into policy development, but CHCG was ultimately responsible for its policies.  *See* ECF 236 (Dr. Anuszkiewicz Depo.), p. 60-61; ECF 240 (Stump Depo.), p. 96.

        b.    <u>Mental Health Care</u>

With respect to the contract to provide mental health care at the Jail, CHCG's bid provided that "CHCG shall provide on-site mental health care services staffed by a licensed

(5:07 CV 3226)

psychologist, psychiatrist, and qualified mental health professionals.  The psychologist will coordinate the clinical aspect of the program and report to CHCG's Administration."   ECF 242-4, p. 3 of 50.  CHCG contracted to provide a licensed psychologist to be on call 24 hours a day, seven days a week.  In addition to providing mental health care to inmates, the CHCG contracted for its psychologist to provide correctional officers and deputies with in service and academy training for a total instruction time of 72 hours per year ("CHCG's psychologist shall be required to instruct a total of 72 hours per year.")  *See* ECF 242-4, p. 41 of 50.

Further with respect to training, CHCG's bid provided, "As a part of CHCG's comprehensive effort to effectively train officers regarding mental health issues, CHCG will provide in-services to B1 [i.e., the Jail's mental health unit] and Women's Dorm officers. . . . The Clinic Director and/or the licensed counselors will conduct these in-services.  CHCG['s] goal is to overcome the knowledge deficit that officers usually have with the mentally ill inmate. . . . "  *See* ECF 242-4, p. 41 of 50 (CHCG's bid defines the "clinical director" as a fully licensed psychologist in the state of Ohio residing within a 50 mile radius of the Stark County Jail."  *See* ECF 242-4, p. 3 of 50.

CHCG sub-contracted with MPI to provide the psychological services necessary to fulfill the requirements of CHCG's contract with Stark County to provide mental health care at the Jail, including training.  Dr. Anuszkiewicz was the person identified by MPI to fulfill those requirements.

4

(5:07 CV 3226)


2.      MPI/Dr. Anuszkiewicz

Defendant Dr. Anuszkiewicz is and has been a licensed psychologist in Ohio since 1985. Defendant MPI is the corporation through which Dr. Anuszkiewicz is employed.  Neither Dr. Anuszkiewicz nor MPI had a contractual relationship with Stark County.  Dr. Anuszkiewicz and MPI provided mental health services to inmates through their contract with CHCG.  Dr. Anuszkiewicz, and Mr. Stump, also provided the training required by CHCG's agreements with Stark County to provide medical and mental health care services.

B.      Events Occurring on the Night of October 20-21, 2006

On the night of October 20, 2006, Stark County Deputy Richard Gurlea (Gurlea) was dispatched by the Stark County Sheriff's dispatching unit to a location in Stark County in response to a 911 call that plaintiff Mrs. Steffey had been the victim of an assault.  Gurlea arrived on the scene, and a series of events unfolded which ultimately resulted in the arrest of Mrs. Steffey for resisting arrest and disorderly conduct.[2]  Gurlea transported Mrs. Steffey to the Stark County Jail ("Jail"), and communicated to the Jail before arriving that Mrs. Steffey was possibly combative.  As a consequence, Stark County Deputy Laura Rodgers ("Rodgers") activated the Stark County Sheriff Department's Corrections Emergency Response Team ("CERT" Team).  The CERT team is composed of officers who are highly trained in riot techniques and cell extractions for violent inmates.

---

[2] Following a jury trial in Alliance Municipal Court, Mrs. Steffey was convicted of both charges.

5

(5:07 CV 3226)

When Mrs. Steffey arrived at the Jail, Nurse Caren Lennon conducted a medical and mental health pre-screening to determine whether she was mentally and medically able to be booked into jail. [3]  One of the questions that Nurse Lennon asked Mrs. Steffey as part of the screening was whether she wanted to harm herself.  Mrs. Steffey agrees that the audiotape of the screening depicts someone saying "now would be a great time" and testified in her deposition that "it sounds like my voice" and that the voice on the tape saying "now would be a great time" "could have been" her voice.  Hope Steffey Depo. at pp. 487-488.  However, Mrs. Steffey maintains that her response to Nurse Lennon's question was: "Now or ever?"  Hope Steffey Depo. at p. 486.

In addition to Nurse Lennon's conversation with Mrs. Steffey as to whether she wanted to harm herself, Nurse Lennon also noted that Mrs. Steffey was reported combative with arrest, and that during the screening she smelled of alcohol, was tearful, appeared labile (i.e., likely to change or break down), intoxicated, and responded to the question about harming herself with a direct stare.  Lennon Depo, p. 23.  Nurse Lennon advised Laura Rodgers, the sergeant on duty at the Jail, of her assessment of Mrs. Steffey.

In addition, Nurse Lennon spoke directly with Dr. Anuszkiewicz, who was on call, by telephone at approximately 9:30 p.m.  After speaking with Nurse Lennon, Dr. Anuszkiewicz recommended that Mrs. Steffey be placed on suicide prevention and homicide prevention with no suicide suit (commonly referred to as "SP/HP No Suit").  What that means is that a detainee is

---

[3] Nurse Lennon is a Licensed Practical Nurse (LPN) and an employee of CHCG.  She was present at the Jail pursuant to CHCG's contract with Stark County to provide medical and mental health care to the inmates and detainees as discussed, above.

6

(5:07 CV 3226)

deemed to be such a high suicide risk that all the detainee's clothing is removed to prevent the detainee from using the clothing to hang herself .

The SP/HP No Suit recommendation was communicated to Jail personnel by Nurse Lennon, and the recommendation was implemented by five County employees with no involvement by either Nurse Lennon or Dr. Anuszkiewicz  The five County employees were Deputy Sergeant Laura Rodgers (female); Corrections Officer Kristen Fenstemaker (female); CERT Team Deputy Brian Michaels (male); CERT Team Deputy Andrea Mays (female); and CERT Team Deputy Tony Gayles (male).

Mrs. Steffey alleges, first, that the suicide risk diagnosis was incorrect and resulted from incompetent medical judgment which resulted in turn from a reliance upon incorrect information from the arresting officer that she was "combative".  She further alleges that her constitutional rights were violated in the process of implementing the SP/HP No Suit recommendation, due to the County employees' use of excessive force; unnecessary use of both male and female staff to forcibly remove her clothing without ever explaining to her what they were doing or why; the placement of her into a cell with nothing but a mattress and no "modesty panel" or other means of protecting her privacy; and failure to provide medical care for her injuries inflicted by the arresting officer and failure to check on her every ten minutes as required for suicide risks.

Subsequently, several hours after being placed into the cell, Mrs. Steffey was screened again by Meghan Ford ("Nurse Ford").  Nurse Ford is another LPN who was employed by CHCG at the time when Mrs. Steffey was at the Jail.  After screening Mrs. Steffey around 3:30 a.m. on October 21, 2009, Nurse Ford phoned Dr. Anuszkiewicz again about Mrs. Steffey.  ECF

7

(5:07 CV 3226)

237 (Ford Depo.), p. 28.  After Nurse Ford communicated the results of her screening to Dr. Anuszkiewicz, Nurse Ford was told by Dr. Anuszkiewicz that Mrs. Steffey could have a suicide suit.  Ford Depo., pp. 32-34.  Hope was released to the care and custody of her husband around noon on October 21st after he had posted a bond.

## II.  LAW AND ANALYSIS

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  U.S. v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56©, except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Reid*

8

(5:07 CV 3226)

*v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[T]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

B.    42 U.S.C. § 1983

In order to maintain a § 1983 claim, plaintiffs have the burden of proving that: 1) a person acting under color of state law, 2) deprived them of a federal right. *Sperle v. Michigan Department of Corrections,* 297 F.3d 483, 490 (6th Cir. 2002) (citing *Berger v. City of Mayfield*

9

(5:07 CV 3226)

*Heights,* 265 F.3d 399, 405 (6th Cir. 2001)).  In the present case, the Court finds enough

evidence in the record from which a trier of fact could reasonably conclude that, on the night of

October 20-21, 2006, the former County defendants acted under color of state law to deprive

Mrs. Steffey of her federal rights under the Fourth, Fifth, and Fourteenth Amendments to be free

from the use of excessive force; to be free from unnecessary deprivation of the right to privacy;

and to receive adequate medical care.  However, the County defendants, as noted earlier, have

settled the case to the extent it applied to them; and so the question becomes whether liability for

the County's alleged constitutional violations can be attributed to the remaining non-County

defendants on the basis of a failure to train and supervise as alleged in the Sixth Count of the

Fourth Amended Complaint.

First, the Court finds no evidence to support § 1983 liability against the defendants

Jonathan Stump and Dr. Anuszkiewicz in their individual capacities as opposed to their official

capacities; and the Court will thus sustain the motions for summary judgment as to Mr. Stump

and Dr. Anuskiewicz in their individual capacities.  Second, the Court concludes, based upon the

evidentiary materials submitted with the summary judgment motion practice, that there is no

genuine issue of material fact from which a jury could reasonably conclude that either MPI or

Dr. Anuskiewicz acted negligently or incompetently in making the diagnosis that Mrs. Steffey

was a high suicide risk on the night of October 20-21, 2006, or of recommending the precautions

of "SP/HP No Suit".  For the reasons that follow, however, the Court finds genuine issues of

material fact as to whether the corporate defendants CHCG and MPI, Inc., and the defendants

10

(5:07 CV 3226)

Mr. Stump and Dr. Anuskiewicz in their official capacities, are liable on the § 1983 failure to train and supervise claim in Count 6; and on the state law negligence claim in Count 7.

C.    "State Action" Requirement for § 1983 Liability

It is well settled that state action is an essential element of a § 1983 claim. *West v. Atkins,* 487 U.S. 42, 48 (1988). CHCG does not dispute that it is a state actor by virtue of its contract with the County. However, MPI and Dr. Anuszkiewicz claim they are not state actors because the work they performed was not performed under contract with the County but merely as a subcontractor of CHCG. The case law holds, however, that where the state authorizes an actor to perform a function which the state itself is otherwise obliged to perform, the actor functions as a "state actor" regardless of the contractual nuances through which the actor has been so authorized. *West v. Atkins, supra,* 487 U.S. at 55-56; *see also Tatsch-Corbin v. Feathers,* 561 F. Supp. 2d 538, 543 (W.D. Penn. 2008) and cases cited therein. Accordingly, the Court concludes that MPI and Dr. Anuszkiewicz must be considered state actors in the present case.

D.    Dr. Anuszkiewicz's Diagnosis of Hope Steffey as a High Suicide Risk

Although it is not crystal clear because it is not set forth as a separate count, it appears that in the Sixth Count of their fourth amended complaint, plaintiffs claim that MPI and Dr. Anuszkiewicz are responsible under § 1983 because Dr. Anuszkiewicz, in the course of his duties as the on-call doctor on the night in question, incompetently diagnosed Mrs. Steffey as a high suicide risk making a "No Suit" order appropriate. Because such a claim is in the nature of a medical malpractice claim, plaintiffs must provide expert testimony that Dr. Anuszkiewicz fell below the applicable standard of care when he made his diagnosis and recommendation on the

11

(5:07 CV 3226)

night in question. The plaintiffs have not done so.  Plaintiffs' only expert is Michael Lyman, Ph.D., who is not a psychologist.  As defendants have noted in their brief supporting their summary judgment motion, Dr. Lyman was critical of the County Jail staff but was not at all critical of Dr. Anuszkiewicz or of Nurse Lennon (upon whose assessment Dr. Anuszkiewicz relied).  Dr. Lyman even stated that he is not qualified to render standard of care opinions as to either Dr. Anuszkiewicz or Nurse Lennon.  *See* ECF 230 at pp. 10-14.   Accordingly, the Court concludes that MPI and Dr. Anuszkiewicz are entitled to summary judgment as to any claims relating to the conduct of Dr. Anuszkiewicz on the night of October 20-21, 2006.

E.     Failure to Train and Supervise

Failure to train can form the basis for liability under § 1983.  *McClendon v. City of Detroit,* 255 Fed. Appx. 980, 983 (6th Cir. 2007) (quoting *City of Canton v. Harris,* 489 U.S. 378, 387-88 (1989)).  The inadequacy of training may serve as a basis for § 1983 liability when the failure to train amounts to deliberate indifference to the rights of the person with whom the police come into contact.  *Id.*  Failure to supervise gives rise to § 1983 liability in cases where there is a history of wide-spread abuse.  *Id.* at 398 (O'Connor, J., concurring in part and dissenting in part).

Plaintiffs allege that the non-County defendants violated 42 U.S.C. § 1983 by failing to implement constitutionally sound suicide risk policies; and by failing to train and supervise Stark County Jail personnel and CHCG personnel in the proper way to handle a suicide risk.  While the Court recognizes that Plaintiffs have to meet a somewhat elevated standard of proof (*i.e.,* "deliberate indifference" or "history of wide-spread abuse") in order to prevail upon these

12

(5:07 CV 3226)

claims, the Court concludes there is sufficient evidence in the record to submit the claims to the jury.  *See* ECF 256 (Plaintiffs' memorandum in opposition) at pp. 16-28 and evidentiary materials and case law cited therein.  It follows that there is also sufficient evidence to submit the Seventh Count pendent state law negligence claims to a jury.

## CONCLUSION

For the reasons set forth above, the Court rules as follows:

1.      The Defendants Thomas M. Anuszkiewicz, Ph.D. and Marion Psychological Corporation, Inc.'s Motion for Summary Judgment (ECF 230) is granted as to all claims against Thomas M. Anuszkiewicz, Ph.D. in his individual capacity as opposed to his official capacity; granted as to any claims related to the performance of duties with respect to the Stark County Jail on the night of October 20-21, 2006; and is otherwise denied.

2.      The Motion for Summary Judgment of Defendants, Correctional Health Care Group, Inc. and Jonathan Stump (ECF 243) is granted as to all claims against Jonathan Stump in his individual capacity as opposed to his official capacity; and is otherwise denied.

3.      The Partial Motion to Strike of Defendants, Correctional Health Care Group, Inc. and Jonathan Stump (ECF 260) is denied as moot.

4.      Trial will commence upon the claims set forth in the Sixth, Seventh, Eighth, and Eleventh Counts of the fourth amended complaint, except to the extent the Court has granted partial

(5:07 CV 3226)

summary judgment as set forth above; and trial remains scheduled for the two-week standby period beginning October 19, 2009. [4]

IT IS SO ORDERED.

_September  24, 2009_                                    _s/ David D. Dowd, Jr._
Date                                                          David D. Dowd, Jr.
                                                              U.S. District Judge

---

[4]  The defendants MPI and Dr. Anuszkiewicz have recently filed a Notice of Engagement of Counsel (ECF 264) stating that on October 19, 2009 Attorney Stephan C. Kremer, who is lead trial counsel in this case, may potentially be engaged in another trial in the Stark County Common Pleas Court.  The Court will not continue this case.  Consequently, it is the responsibility of Attorney Kremer to resolve his scheduling conflict with the common pleas court or, in the alternative, to provide for other trial counsel for his clients in this case.