UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOPE STEFFEY, et al., | : | Case No. 5:07-CV-03226 |
| | : | Judge David D. Dowd, Jr. |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY A. SWANSON, et al., | : | **MOTION FOR ATTORNEY FEES** |
| | : | **AND COSTS AND MEMORANDUM** |
| Defendants | : | **IN SUPPORT** |
| | : | |
| | : | |

**MOTION**

Plaintiffs, pursuant to 42 U.S.C. §1988, move for an award of **$539,738.25** for reasonable attorney's fees and **$84,836.46** in expenses against Defendant Stark County. These amounts are explained in detail in the memorandum below and in the attached declarations and exhibits. Plaintiffs submit this request for work done through September 18, 2009. All work after that date relates to the non-county defendants and is not a part of this motion.

**MEMORANDUM IN SUPPORT**

**I.     Introduction**

Plaintiffs are prevailing parties in this Section 1983 action. They have accepted a Rule 68 offer of judgment and pursuant to that offer and acceptance this Court will determine reasonable fees and costs to be awarded to Plaintiffs' counsel and paralegals in this case. Plaintiffs understand that this Court's decision will not be appealable. Attorney fees and costs are authorized pursuant to 42 U.S.C. §1988, which provides that the Court may award "a reasonable attorney's fee" to prevailing parties as part of costs. *Hensley v.*

*Eckerhart* 461 U.S. 424, 103 S.Ct. 1933 (1983) ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

For the reasons set forth more fully below, Plaintiff respectfully submits that the hours expended in this case were reasonable given the difficulty of the case and the importance of the issues. Additionally, the hourly rates requested by each attorney and staff member (paralegals) are reasonable given their background and experience.

**II.     Standard For Awarding Attorney Fees**

The criteria for the award of attorneys' fees and costs are set forth in *Blum v. Stevenson*, 465 U.S. 886, 104 S.Ct. 1541 (1984), *Hensley v. Eckerhart* 461 U.S. 424, 103 S.Ct. 1933 (1983), *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2368 (1992), and *Northcross v. Bd. of Ed. of Memphis School District*, 611 F.2d 624 (6th Cir. 1979), *cert. denied*, 447 U.S. 911 (1980). Once a plaintiff crosses the statutory threshold and is found to be a "prevailing party," the plaintiff is "entitled to recover attorneys' fees for 'all time reasonably spent on a matter.'" *Northcross* at 636. In the case at bar, Plaintiffs are prevailing parties.

**III.    The Hours Expended By Plaintiffs' Counsel In Successful Vindication Of Plaintiff's Federal Rights Were Reasonable**

The Supreme Court has recognized the normal method for calculating an appropriate award of attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley* at 433. *Northcross* clearly sets forth the procedure for calculating the number of hours reasonably expended. *Northcross* at 636-637. The Court should indicate on the record the number of hours it finds the prevailing parties' attorneys and paralegals have expended on the case. This

finding must first take into account the declarations of counsel.  The hours claimed need not be automatically accepted by the court, but to the extent that hours are rejected, the court must indicate some reason for its action.  Hours may be cut for duplication, padding or frivolous claims.  If a court decides to eliminate hours of service adequately documented by the attorneys and their paralegals, then it must identify those hours and articulate its reasons for their elimination.  *See, Northcross*, *supra*.  Time spent for litigating the fee issue should also be included in the award.  *See*, *Weisenberger v. Huecker*, 593 F.2d 49 (6th Cir. 1979).

   The time spent on this action is reasonable.  The standard for making that determination follows:

> The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved.  Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

*Wooldridge v. Marlene Industries Corp.*, 898 F. 2d 1169, 1177 (6th Cir. 1990).  Under this test, all hours expended in this action by plaintiff's attorneys were reasonable.  Discovery required approximately twenty-five depositions,  6 experts, more than 260 documents filed on ECF, thousands of pages of evidentiary materials (including video and audio recordings),  and countless exhibits.  The litigation spanned three years.

   The work was divided as follows.  Mr. Malik handled the vast majority of the case plan development, strategy, and pre-suit investigation. He then, acting as lead counsel, worked tirelessly with his co-counsel, Mr. Niermann and Mr. Riotte, as well as paralegals throughout this litigation. The initial work involved a fair amount of research on the legal claims and potential defenses. This was a collaborative effort among all the

attorneys and various paralegals.  Extensive consults were held with experts and Plaintiff's counsel throughout this case.  Mr. Niermann assisted with discovery, taking several depositions, including many expert depositions, and co-drafted all filings, along with Mr. Malik and Mr. Riotte. Mr. Riotte, a newly admitted attorney, did much of the initial legal research and first draft of many documents filed on the ECF.

All of the attorney, paralegal, and law graduate time was recorded contemporaneously with the service.  The compilation of Plaintiffs' attorneys' time records and expenses are found in the attached Excel Spreadsheet. Plaintiffs' attorneys and staff exercised billing judgment at the time of entry of the times and did not record every minute spent on the case.  The hours and work performed, and the reasonable expenses incurred in this litigation, are explained in the declarations attached to this motion and memorandum, and have been accurately calculated in the attached Excel Spreadsheet.

David Malik advanced, at his sole risk, all costs in this litigation.

It also should not go unsaid that other courts have recognized the efforts of the very same counsel making this application. The 8th District Court of Appeals the Ricardo Mason case (attached) recently ruled on October 15, 2009 that the efforts and services rendered of these same counsel in a 1983 Civil Rights case were "extraordinary" and "prodigious." The same methodology recognized by the 8th District Court of Appeals was applied in this case.

**IV.  Calculation Of Fees and Expenses Under 42 U.S.C. §1988**

Plaintiff requests an award of fees based on hourly rates of $ 350.00 for David B. Malik; $ 350 for Dennis Niermann, and $160.00 for Samuel Riotte.  In addition law clerk

4

and paralegal rates range $95 per hour to $130.00 per hour for a graduate from law school. All these rates are comparable to or below market rates in the Northern District of Ohio.

Judge Kathleen O'Malley, in *Local 310 Pension Fund v. Able Contracting Group, Inc.*, 2009 U.S. Dist. LEXIS 23670 (N.D., Ohio) (attached) ruled that "...in determining a reasonable rate, the Court is not limited to the parties' submissions, however...it may also consider the awards in analogous cases...and its own knowledge and experience in handling similar requests for fees..." Judge O'Malley also cited *Friley v. UNUM Provident*, 2006 U.S. Dist. LEXIS 15450 (N.D. Ohio 2006) awarding $350.00 per hour to an experienced partner and $200 per hour to an associate in support of the proposition that experience and expertise are important factors in determining whether a requested rate is reasonable. Plaintiffs' counsels' rates sought in this application are well in line with those cited in Judge O'Malley's decision.

Despite the fact that Messrs. Malik, Niermann and Riotte are not "partners" or "associates" in a large (typically defense) firm, they nonetheless have experience equal to that of comparable partners or associates in large established firms with a similar number of years of experience, as the declarations submitted with this motion indicate. Many of those partners and associates at large firms with similar experience receive hourly fees in excess of those requested by Plaintiffs in this case. The same is true for paralegals and law clerks.

The attached declarations of David B. Malik, Dennis J. Niermann and Samuel S. Riotte all outline their prior education, involvement in other civil rights and related cases, as well as confirming the their own reasonably billable time and the expenses

advanced solely by David B. Malik

Plaintiffs are entitled to an award of costs for expenses, including filing fees, witness fees, mailings, deposition and transcript costs. *Northcross v. Bd. of Ed. of Memphis School District*, 611 F.2d 624, 639 (6th Cir. 1979), *cert. denied*, 447 U.S. 911 (1980). Those reasonable costs and expenses are found in the attached Excel Spreadsheet and are verified by way of Mr. Malik's attached declaration.

**V. Explanation of Necessary Expert Expenses**

Plaintiffs are aware of the extensive use of experts in this case. Success for the Steffeys required and depended upon specialized knowledge from a number of experts. The following serves as a brief explanation in support of their use and necessity. These experts' contributions were necessary and reasonable to successfully litigate Plaintiffs' claims against the County.

a) Plaintiffs hired Cheryl Wills, M.D. ("Wills") , a board certified forensic psychiatrist. Dr. Wills met with Mrs. Steffey, assessed her mental health and its relation to her detention in the Stark County Jail. In essence, Wills was a damages expert who could also provide an assessment of Stark County Jail's services. In particular, Dr. Wills used her expertise to assess the various, and at times conflicting and overlapping, policies and procedures[1] that individuals from both corrections staff and medical staff claimed to be in operation when Hope Steffey was detained. Dr. Wills's assessment of Sheriff Swanson's jail concluded that the policies and procedures provided to her were inadequate for dealing with suicidal/mentally ill individuals. Furthermore, she opined that the training inside Stark County Jail was inadequate and that the Defendants knew or

---

[1] Dr. Wills's opinion relied upon: "General Orders for Stark County Sheriff's Office," "Stark County Jail Monitoring Protocols," and the "Correctional Health Care Group, Inc. Contract for service delivery."

should have known the existence of such inadequate policies and training would result in serious injuries to individuals like Hope Steffey.

It eventually became clear that this case was going to turn primarily on correctional issues and not on the determination of whether the jail's medical staff acted appropriately from a medical, as opposed to a correctional, standpoint. This, along with Dr. Wills's costs, led Plaintiffs to determine that her services were no longer needed and she had provided everything that she could that was necessary.

b) Plaintiffs hired Margaret Severson, MSW, JD for her academic and occupational experience in the area of Corrections. Unlike Dr. Wills, Ms. Severson had extensive corrections history and she could provide the necessary and valuable "Corrections Perspective." Notably, Ms. Severson has many years of experience as a "principle investigator" in both state and federal Corrections settings. She was also prison monitor appointed by the Federal Court. Ms. Severson provided expert opinions regarding the quality and effect of Stark County Jail's policies and procedures and expert opinion about the staff training needed to meet legally acceptable standards of care in jails. As a result of Ms. Severson's contributions, Plaintiffs understood the importance of obtaining a clear picture of exactly which policies were operating in the jail when Hope Steffey was detained. Efforts to determine this critical issue were not satisfied. Following lengthy discovery, the Defendants disagreed about which policies/procedures were in operation. Furthermore, Severson (coupled with Wills) provided Plaintiffs a complete and thorough understanding policies and procedures in the Stark County Jail were responsible for the harm Hope Steffey suffered. In their opinion, Hope Steffey's injuries were the result of confusion and disagreement among all staff regarding which policies were

controlling, and the lack of clarity found in the policies themselves.

Because aspects of Plaintiffs' Section 1983 suit required determining whose policies and procedures actually existed and were in operation during Hope Steffey's detention, the Plaintiffs wanted to amend their Complaint to add additional parties and potentially get answers to these questions. The information contained in the reports penned by Wills and Severson, in connection with the information gleaned through numerous depositions of Stark County Jail staff in summer of 2008, led the Plaintiffs to move this Court to file a Fourth Amended Complaint. Plaintiffs provided to this Court copies of each of the reports to support their Motion and Memorandum. This Court granted Plaintiffs' request and Plaintiffs filed the Fourth Amended Complaint.

Ms. Severson's schedule, coupled with an increasing concern about the cost of litigation resulted in the Plaintiffs no longer desiring Ms. Severson's services.

c) Plaintiffs retained expert Michael Lyman Ph.D. for his expert opinion regarding police operations. As a former police officer and current author, teacher, lecturer and police trainer, Lyman provided necessary opinions regarding the Stark County Sheriff officers' duties and legal requirements. Lyman provided expert opinions regarding the initial use of force during the arrest, the use of force in the jail cell and the factors that contributed to these unreasonable and shocking violations. He opined about Stark County's failure to train its field officers and its CERT team members in appropriate uses of force. Plaintiffs retained Dr. Lyman because he could offer an expert opinion regarding each facet of Hope Steffey's interaction with Stark County deputies. Furthermore, Plaintiffs' counsel's familiarity with Lyman ensured that he would be a strong trial witness.

d) Ellen Casper is a treating psychologist and not an expert witness who treated Hope Steffey. She would have testified as to the emotional distress experienced by Plaintiffs.

e) Plaintiffs hired expert Dr. Paul Deardorff to provide testimony and expert opinion in support of Ellen Casper's diagnoses of Hope Steffey. His opinion was limited to objective, quantitative measures supporting Ellen Casper's diagnoses of Hope Steffey's condition. Dr. Deardorff was necessary because Ellen Casper did not perform and psychological testing of Hope Steffey. Dr. Deardorff conducted numerous psychological tests to determine Mrs. Steffey's "baseline" mental status at the time of the incident and thereafter.

f) Plaintiffs hired Dr. Thomas White is an internationally known expert in the field of jail suicide. Plaintiffs have not included Dr. White's services for their costs because his opinions regarding suicide protection are more properly attributable to the litigation against the non-County defendants.

g) Dr James Knoll is a M.D. is a psychiatrist from the State University of New York who specializes in the practice of psychiatry in jails. Dr. Knoll assisted David B. Malik as a consultant and for deposition preparation.

David B. Malik has incurred expenses and the Steffeys' legal team have expended reasonable time in their efforts. The hourly rates sought are, again, consistent with those typically paid in the same market area where the Steffeys' counsel practice law.

The attached time and expense records are summarized on the table below:

9

|  | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| David B. Malik |  | $350.00 | $230,793.50 |
| Dennis Niermann |  | $350.00 | $196,857.50 |
| Samuel S. Riotte |  | $160.00 | $70,872.00 |
| Law Graduate Cara Wright |  | $130.00 | $9,633.00 |
| Paralegal Ruth Ann Fraedrich |  | $125.00 | $28,656.25 |
| Law Clerk Jeniffer Thompson |  | $95.00 | $2,926.00 |
| **Total Attorneys Fees** |  |  | **$539,738.25** |
| **Total Expenses** |  |  | **$84,836.46** |
| **Total Fees and Expenses** |  |  | **$624,574.71** |

## VI.  CONCLUSION

Plaintiff should be awarded attorney fees, paralegal fees, law graduate fees in the amount of **$539,738.25** , and costs and expenses in the amount of **$84,836.46**  for a total of  **$624,574.71**.

Respectfully Submitted,

/s/ *Dennis J. Niermann*
David B. Malik (0023763)
Samuel S. Riotte (0082678)
Dennis J. Niermann (0007988)
8437 Mayfield Rd. Suite 103
Chesterland, OH 44026
ph. (440)729-8260
fax (440)729-8262
email:  dbm50@sbcglobal.net
email: s.s.riotte@gmail.com
email: dennis@niermannlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 30, 2009 that a true copy of the foregoing was filed, along with all pertinent declarations, spreadsheets, case law and other related materials, using this Court's ECF filing system. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically, which there are none in this matter.

                                            s/ Dennis J. Niermann
                                            Co-counsel for Plaintiffs